**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**FRANCIS BRAUNER**                                    **CIVIL ACTION**

**VERSUS**                                             **NO. 12-314-LMA-DEK**

**SHIRLEY COODY, ET AL.**


<u>**PARTIAL REPORT AND RECOMMENDATION**</u>

Plaintiff, Francis Brauner, a state prisoner, filed this federal civil rights action claiming that he has been denied adequate medical care while incarcerated at the Louisiana State Prison in Angola, Louisiana. During the course of these proceedings, all claims arising before January 18, 2011, were dismissed with prejudice as prescribed.[1]

<u>I. Motions for Summary Judgment</u>

Currently pending before the undersigned are a motion for summary judgment filed by Assistant Warden Shirley Coody, Assistant Warden Kenneth Norris, Dr. Jonathan Roundtree, Dr. Jason Collins, and Dr. Hal McMurdo, defendants herein,[2] as well as an opposition and cross motion for summary judgment filed by plaintiff.[3] In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to

---

[1]    Rec. Doc. 86.

[2]    Rec. Doc. 70. Nurse Sharon Dunbar also joined in that motion; however, plaintiff subsequently voluntarily dismissed his claim against Dunbar. Rec. Docs. 90 and 93.

[3]    Rec. Doc. 72.

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  <u>Taita Chemical Co., Ltd. v. Westlake Styrene Corp.</u>, 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); <u>see also</u> <u>Provident Life and Accident Ins. Co. v. Goel</u>, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  <u>Ragas v. Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  <u>Id</u>.; <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1429 (5th Cir. 1996).

In the instant case, plaintiff alleges that he has been denied adequate medical care in violation of the Eighth Amendment to the United States Constitution.  <u>See</u> U.S. Const. amend. VIII

("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). With respect to medical care, a prisoner's rights under the Eighth Amendment are violated *only* if his "serious medical needs" have been met with "deliberate indifference" on the part of penal authorities. <u>See, e.g.</u>, <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Defendants do not argue that plaintiff's medical needs are not serious, and this Court, based on its review of the medical records, finds that plaintiff does indeed suffer from serious medical needs.

Defendants do argue, however, that plaintiff cannot prove that they have acted with deliberate indifference. The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

<u>Domino v. Texas Department of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and

wanton infliction of pain repugnant to the conscience of mankind." <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997); <u>see also</u> <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999).

In this lawsuit, plaintiff, a paraplegic, alleges that he has been denied "medication for pain, proper assessment and documentation of his decubitus ulcers and/or catheter wound, proper and timely dressing changes, proper turning, proper hygiene, adequate range of motion therapy, a slide board (necessary mobility aid), sanitary bathing/shower area, and adequate bathing."[4] However, for the following reasons, in none of those respects can plaintiff show that the defendants acted with deliberate indifference.

### Pain Medication

In his complaint, plaintiff alleges that he "has made repeated complaints to his treating physicians and the nurses about being prescribed adequate medication for pain to no avail."[5]  In support of their motion for summary judgment, Drs. Roundtree, McMurdo, and Collins have all submitted sworn affidavits addressing this issue;[6] in support of his opposition and cross-motion for summary judgment, plaintiff has submitted a declaration executed under penalty of perjury.

In his affidavit, Dr. Jonathan Roundtree states:

---

[4]    Rec. Doc. 1, p. 5.

[5]    Rec. Doc. 1-1, p. 17.

[6]    In their affidavits filed in connection with their motion, Drs. Roundtree, McMurdo, and Collins normally provide footnotes to the medical records which support their statements. Throughout this Partial Report and Recommendation, the undersigned has omitted those footnotes when quoting from the affidavits.  It is noted, however, that the medical records appear in this record at Rec. Docs. 43-3 - 43-8.

41.

I treated plaintiff on numerous occasions at a time prescribing to plaintiff lortabs for knocking out any associated pain resulting from his condition.

42.

I discontinued plaintiff's prescription for Loritabs [sic] and prescribed 800 milligrams of Methadone 3 times per day for six weeks.

43.

Methadone, a similar but liquid form of pain killer, was prescribed in place of plaintiffs [sic] Loritab [sic] prescription only after plaintiff was suspected of engaging in the distribution of the latter rather than using it for its medical purpose. Plaintiff is not allowed narcotics for pain due to past drug abuse.[7]

In his affidavit, Dr. Hal McMurdo states:

34.

I treated plaintiff on numerous occasions at a time prescribing plaintiff lortabs for knocking out any associated pain resulting from his condition.

35.

Plaintiff's prescription for Lortabs and prescribed 800 milligrams of Methadone 3 times per day was thereafter discontinued.

36.

Methadone, a similar but liquid form of pain killer, was prescribed in place of plaintiffs [sic] Lortab prescription only after suspicion arose by a number of Penitentiary officials that certain offenders were passing their medication out the treatment center and turning it over to other offenders for recreational use rather than for its prescribed medical purposes.

37.

Plaintiff is currently prescribed Neurotin, Parafon Forte and nighttime Valium for relief from pain associated with his condition.[8]

In his affidavit, Dr. Jason Collins states:

15.

This offender is currently prescribed Neurotin, Parafon Forte and nighttime Valium for relief from pain associated with his condition. Medical personnel

---

[7]     Rec. Doc. 70-4, p. 9.

[8]     Rec. Doc. 70-7, pp. 7-8.

recalled a previous prescription only after suspicion was raised that certain narcotics [sic] drugs were being let out off the ward and put into the hands of other inmate offenders. Plaintiff's current pain medication regime consists of the administration of Elavil, Parafon Forte and Valium and is in line with plaintiff's medical needs and treatment plan.

16.

During my initial treatment of this offender, I consulted Neurologist, Dr. Charles A. Barkemeyer to evaluate this offender and his condition. Dr. Barkemeyer opined that, due to plaintiff's spinal cord injury, pain below plaintiffs [sic] waist, which this offender often complained of in an attempt to secure lortabs, was not possible but recommended that plaintiff be placed on Neurotin to assist plaintiff with any residual pain rather than the prescription lortabs, a known narcotic.[9]

In his declaration, plaintiff states:

6. I made repeated complaints about being prescribed methadone and that it made me violently ill and made repeated requests to change the methadone to another more adequate pain medication only to be denied by Dr. Jonathan Roundtree. Proof of my allegations is within my medical records. On page 626 of the medical records provided, Dr. Muhumza notes that I started on Methadone 1 year ago and that it made me violently ill. The decision was deliberate, knowing and intentional.[10]

Clearly, a prisoner has no right to be prescribed a particular medication for pain, and the fact that he disagrees with the prison medical staff concerning which pain medication is appropriate simply is not actionable under § 1983. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994) (a refusal to provide an inmate with the specific pain killers he requests does not rise to the level of a constitutional violation). This is true even if the medication chosen by the prison doctor is not as effective as an alternative the prisoner would prefer, because the fact that a prisoner's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v.

---

[9]    Rec. Doc. 70-6, p. 4.

[10]    Rec. Doc. 72-2, p. 5.

Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Moreover, where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

The prescribing of pain medication calls for professional medical judgment, and medical judgments are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). Here, plaintiff is not being denied pain medication. On the contrary, he is in fact receiving several types of pain medication, and there is no evidence that the pain medication he is being prescribed is medically improper or that the defendants have intentionally prescribed the wrong medication. Accordingly, there is no basis whatsoever to secondguess the physicians' professional medical judgment or to find that they have acted with deliberate indifference.

<u>Wound Care and Dressing Changes</u>

In his complaint, plaintiff alleges that "dressing changes are not being performed in a timely manner, and in repeated instances, applied incorrectly."[11]  He further alleges:

> As a result of the inadequate medical care ..., Plaintiff now has severe deubitus ulcers.  Plaintiff avers that he has had the decubitus ulcers for extended period of time and his condition is ongoing.  Plaintiff further avers that had he been receiving proper medical care and treatment, these wounds would have healed long ago or he should have been provided treatment to resolve the wounds. ... Dr. Roundtree, Dr. Collins, and Dr. McMurdo, have not only failed to provide adequate care and treatment, they have failed in their duties to correct the repeated and deficient care provided by the nurses imposing a substantial risk of harm to Plaintiff's health and well being.
> Considering the extended period of time which Plaintiff has had the ulcers, the condition of Plaintiff's decubitus ulcers and the damage from untimely and improper catheter changes, Plaintiff submits that this is  a clear indication that the assessment and documentation of his wounds is not being performed adequately. Although the Assistant Warden of the Treatment Center may not be directly involved with plaintiff's medical care, they are involved in review of records and assuring that Plaintiff receives proper care and treatment.  The Assistant Warden does meet with the Medical Director regarding these matters and the problem is still ongoing. Considering the numerous complaints made by Plaintiff, this clearly indicates that the Assistant Warden and the Medical Director over the Treatment Center have failed in their duties.  The Medical Director over the Treatment Center is directly involved with Plaintiff's medical care and has failed in his duties.  The inadequate treatment and care is still ongoing and neither have intervened to correct same.[12]

In support of their motion for summary judgment on these issues, Drs. Roundtree, McMurdo, and Collins have again all submitted sworn affidavits; plaintiff has likewise submitted a declaration executed under penalty of perjury in support of his opposition and cross-motion for summary judgment.

---

[11]   Rec. Doc. 1-1, p. 9.

[12]   Rec. Doc. 1-1, pp. 10-12.

In his affidavit, Dr. Jonathan Roundtree states:

### 10.

... Plaintiff's medical records show from January 3, 2011 to March 3, 2011 plaintiff received treatment in the form of cleansing of his left and right buttocks wounds with application of Iodosorb cream to wound bed twice per day pursuant to doctors orders.

### 11.

It is noted that plaintiff refused his dressing change January 25, 2011.

### 12.

On February 1, 2011 Dr. Hal McMurdo was notified that his wound care order was out. [T]he nurses notes indicate new orders for wound care were written that same day by Dr. Hal McMurdo.

### 13.

On March 30, 2011 Dr. Guy Williams ordered one month of cleansing plaintiff's left and right buttocks with Melgisorb and gauze dressing every night for the following month. The medical records reflected that the wounds was [sic] cleansed and dressed in accordance with Physician Orders.

### 14.

On April 7, 2011 Dr. Hal McMurdo took over plaintiff's care from Dr. Guy Williams.

....

### 16.

Starting May 1, 2011, the medical records reflect plaintiffs [sic] wounds were cleansed with Melgisorb and treated with gauze every night for the following three months, until August 1, 2011, without any missed applications.

....

### 18.

From March 30, 2011 through April 29, 2011 plaintiff's right and left buttocks wounds were treated with Melgisorb gauze dressing every night for two weeks pursuant to doctors orders and without any missed applications.

### 19.

On May 27, 2011, the documentation reflects Dr. Hal McMurdo placed plaintiff on a multivitamin regime for a year forward to assist in the wound healing process.

20.

On May 31, 2011, Dr. Hal McMurdo ordered a culture for plaintiff's wounds with a 'gram stains stat' and ordered that plaintiff be started on Vancomycin, a type of antibiotic, intravenously every 12 hours for a period of 10 days.

21.

It is noted that on June 9, 2011 that pursuant to physicians orders, plaintiff's wounds were treated with saline soaked packing for a total of eleven applications.

22.

Pursuant to Dr. Hal McMurdo's orders, on June 24, 2011, plaintiff underwent a blood culture, urine culture, wound culture, chest x-ray, abdominal x-ray with plaintiff to begin taking Zosyn via IV every 6 hours daily and plaintiff's wounds were ordered packed with medical solution with no stop date given.

23.

It is noted that on June [sic] 7, 2011, Dr. Hal McMurdo ordered sterile soaked gauze applied to plaintiff's wounds daily for the following three months or until October 7, 2011 and ordered plaintiff to be given 500 milligrams of Ascorbic acid (vitamin C) once daily until November 6, 2011.

....

25.

On August 24, 2011, Dr. Hal McMurdo ordered an increase in plaintiff's dressing changes to twice per day for the following 2 weeks with 80 Milligrams gentamycin in 150 Milliliter soaked gauze and packing of wounds twice per day for the following 2 week period.

26.

From September 7th through October 4th of 2011 Dr. Hal McMurdo ordered plaintiff's gauze be soaked in gentamycin and packed into the wound bed each shift for a period of 2 weeks.

27.

From October 4, 2011 to January 3, 2012 pursuant to Doctors orders, plaintiffs [sic] gauze were soaked in gentamycin and packed to his buttocks and coccyx (a small triangular bone at the base of the spinal column in humans) every day for three months with only three missed applications noted.

28.

On October 10, 2011 the medical records reflect that a culture and sensitivity of the right hip was ordered by Dr. Hal McMurdo.

29.

On October 27, 2011, Dr. Hal McMurdo ordered plaintiff placed on 500 Milligrams of Ascorbic acid (Vitamin C) daily for the following six months.

30.

From October 27, 2011 to November 10, 2011, plaintiff's wounds were ordered packed with Dakin's solution every 12 hour shift after cleaning and to cover with clean and dry dressings during this time period. The record reflects only 3 missed applications during this time period.

31.

On November 2, 2011, I received the wound culture report dated October 16, 2011 and I reported no new orders at that time but continued to monitor plaintiff for fever during the ensuing time period.

32.

From November 10, 2011 to November 24, 2011 plaintiff's wounds were cleaned each shift and packed with Dakin soaked gauze and covered with dry dressings with only 3 missed applications. It is noted however, that plaintiff refused treatment on November 22, 2011.

33.

From November 25, 2011 to December 9, 2011 plaintiff's left and right buttock wounds were ordered by Dr. Hal McMurdo to be packed with gauze and a Dakin's solution and covered with dry dressings twice daily for two weeks. The notes pertinent to this time period indicate one missed application on the part of staff and three incidents of refusal of medical attention on the part of plaintiff.

34.

On December 12, 2011 Dr. Hal McMurdo ordered staff to clean plaintiff's wounds with wound cleaner, pack with Dakin's soaked gauze, cover with dry dressings with no end date noted. The records pertinent to this order indicate only one missed application on the part of staff and five refusals by plaintiff.

35.

On December 12, 2011 it is noted that Dr. Hal McMurdo ordered that plaintiff be given Vitamin B & C one [sic] daily for the next six months in an effort to assist in the healing of plaintiff's pressure soars [sic].

36.

From February 28, 2012 to March 28, 2012, plaintiff's wounds were cleansed and packed with Dakin's soaked gauze and dry dressings were applied daily with no recorded missed applications on the part of medical staff.

37.

From April 17, 2012 to May 17, 2012 plaintiff's sacrum and buttocks wounds were cleaned and packed with Dakin's soaked solution twice daily with only five noted missed applications.[13]

Dr. Hal McMurdo's affidavit was substantially similar on these points, essentially repeating paragraphs 16-37 of Dr. Roundtree's affidavit.

In his affidavit, Dr. Jason Collins states: "A review of plaintiff [sic] voluminous medical records shows there are, consistently, medical treatment orders in place and being carried out with regard to this offenders [sic] treatment plan and that these orders often times consist of twice daily dressing changes, administration of medication to assist with pain and vitamin supplements to aid this offender in the wound healing process."[14]

In his cross motion for summary judgment, plaintiff "avers that protocol for wound care and dressing changes is well established in the medical community. Plaintiff further avers that the protocol for wound care and dressing changes at the R.E. Barrow Treatment Center of the Louisiana State Penitentiary is well established and in writing."[15] Further, in his supporting declaration, he states:

8. After review of my medical records provided by the Defendants, there are repeated instances wherein the treating physician ordered dressing changes BID

---

[13] Rec. Doc. 70-4, pp. 3-8.

[14] Rec. Doc. 70-6, p. 4.

[15] Rec. Doc. 72-1, p. 6.

(twice daily). However, the nursing notes and/or wound care management forms repeatedly indicate that dressing changes are being performed once a day. This is contrary to doctor's orders, contrary to reasonable standards of medical care, and contrary to the Defendant's policies and/or directives enunciated in their health care manual. Additionally, assessment and documentation of the wounds pertinent to size and condition is **rarely** noted.[16]

As a preliminary matter, the Court notes that the medical staff's alleged failure to abide by prison policies or directives is of little import because "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009).

Plaintiff's allegation that the wound treatment he received was contrary to the applicable standards of care is likewise unpersuasive for two reasons. First, he has offered no competent summary judgment evidence whatsoever in support of that allegation. Second, in any event, that issue simply is not determinative. Rather, as noted, plaintiff must be able to demonstrate that the defendants acted with "deliberate indifference," and that requires him to prove that they disregarded a substantial health risk "about which they knew." Gobert v. Caldwell, 463 F.3d 339, 348 (5th Cir. 2006). That showing is not made simply by showing that they failed to meet a standard of care. Id.

Here, the critical issue is whether the doctors "purposefully neglected [the prisoner's] medical needs." Id. at 349. The abundant medical records in this case clearly rebut any contention that there was purposeful neglect or deliberate indifference. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

---

[16]    Rec. Doc. 72-2, p. 5.

13

Moreover, it is apparent that plaintiff is not contending that the defendants *failed to prescribe* appropriate wound care. Rather, his claim is that the defendants failed to ensure that the nursing staff was actually following the prescribed orders. That claim, however, cannot succeed for the following reasons.

To the extent that plaintiff is proceeding on a theory of vicarious liability, he obviously cannot be granted relief. There is no vicarious liability in actions brought pursuant to 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

Of course, supervisory liability does exist in § 1983 actions in certain very limited circumstances where the supervisor's *own conduct* caused the constitutional deprivation due to his failure to train or supervise his subordinates. However, as the United States Fifth Circuit Court of Appeals has explained:

> To hold a supervisory official so liable, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.*

Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998) (emphasis added; citation and quotation marks omitted). Here, again, plaintiff cannot establish deliberate indifference. He has no evidence that the defendants were actually aware that the nurses were not following the prescribed orders. Although plaintiff argues that the failure was self-evident from the fact that his wounds did not heal,

that simply is not so. That failure could well be attributable to numerous factors; for example, the defendants have, in their sworn affidavits, explained that, in their professional medical judgment, the failure-to-heal resulted from plaintiff's refusal to reposition himself to relieve pressure on his skin and to allow medical treatments, as well as a growing tolerance of the antibiotics he was prescribed.[17]

## Turning/Range of Motion Therapy

In the complaint, plaintiff also alleges that he was denied proper turning and adequate range of motion therapy. However, he makes no factual allegations concerning those two claims in his verified complaint,[18] and he does not address the claims in any way in his cross motion for summary judgment filed in opposition to the defendants' motion. Accordingly, there is no competent summary judgment evidence before the Court to rebut the defendants' evidence showing that they did not act with deliberate indifference.

## Slide Board

In his complaint, plaintiff alleges that he "has made requests for a slide board (mobility aid) to avoid pain only to be repeatedly denied and/or ignored by Dr. Roundtree when submitted."[19] In

---

[17] Rec. Docs. 70-4, pp. 2 (¶ 7), 4 (¶ 15), 6 (¶ 24), 9 (¶ 38), and 10 (¶ 46); 70-6, pp. 2 (¶¶ 8-9), 3 (¶¶ 10-11), and 5 (¶ 18); 70-7, pp. 2 (¶¶ 6, 9-10), 4 (¶ 20), and 8 (¶ 38).

[18] He makes no allegations whatsoever with respect to the denial of adequate range of motion therapy. With respect to the denial of proper turning, he only opines that such turning is necessary and that a "patient should be turned very two hours." Rec. Doc. 1-1, p. 15. However, he makes no factual allegations concerning how (or if) the defendants failed to provide proper turning in his specific situation.

[19] Rec. Doc. 1-1, p. 18.

support of the defendants' motion for summary judgment, Dr. Jason Collins submitted a sworn affidavit addressing this issue, stating:

12.

      This offender's complaint with regard to the denial of his request for a slide board to assist in transferring from his bed was considered by the medical staff at LSP, including myself, but not found to be medically necessary at the time of the request because there was prior to the time of filing of this lawsuit and is currently both nurses and inmate orderlies available on the ward to assist this offender in making the transition to and from his bed without disrupting his wound beds.

13.

      In addition to the above, this offender has previously been provided numerous pressure reduction aids including a pressure reduction air mattress on his bed, a custom designed wheelchair to assist in the overall reduction of pressure to his body while sitting and a trapeze suspended above his bed to aid in repositioning and pressure reduction to his body.[20]

      Similarly, Nurse Sharon Dunbar submitted a sworn affidavit in which she stated that she had "no knowledge of this offender lodging a request for a slide board to the medical staff at LSP. In any event, a slide board would not be medically necessary as there are consistently nurses and orderlies on the unit to assist plaintiff in making the transfer from his bed to his wheelchair and vice versa."[21]

      Here, plaintiff was provided the medical devices prescribed for him. Although he wants an *additional* device, a slide board, he has provided no evidence that the device is in fact medically necessary. Without such evidence, he cannot establish that the defendants acted with deliberate indifference in denying him that device. See, e.g., McLaughlin v. Darbouze, No. 2:04-cv-1028, 2007 WL 484550, at *5 (M.D. Ala. Feb. 9, 2007) ("While Plaintiff may believe that his condition

---

[20]   Rec. Doc. 70-6, p. 3.

[21]   Rec. Doc. 70-5, p. 3.

required certain diagnostic tests or specific medical devices, the fact that Defendant found such procedures and devices neither medically necessary nor medically indicated does not establish deliberate indifference.  As noted, a difference of opinion between an inmate and health care personnel regarding the expediency of a specific treatment does not generally create a constitutional claim ....").  While using a slide board might well be preferable to using nurses and orderlies, that is not determinative because, again, the fact that an inmate's medical care "may not have been the best money could buy" is insufficient to establish a federal violation.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).

Sanitary Bathing/Shower Area and Adequate Bathing/Hygiene

In his complaint, plaintiff alleges:

> Plaintiff avers that he has complained repeatedly about the shower/bathing area and assistance with adequate bathing.  Another reason for Plaintiff not bathing often enough is that the bathing area/showers are not cleaned properly presenting substantial risk of infection and further harm to Plaintiff's health.  On a repeated basis, Plaintiff has to endure days without bathing.  Bathing requires assistance which is often unavailable.  Plaintiff has to rely on other offenders, whether orderlies or hospice volunteers to assist him.  These offenders have many other duties as well and often refuse to assist him with bathing.  Plaintiff submits that the responsibility to assist him in bathing does not belong to other offenders and should be delegated to a professional of the Treatment Center staff.  Again, this is deliberate indifference to my serious medical needs.[22]

In support of the defendants' motion for summary judgment, Dr. Jason Collins submitted a sworn affidavit addressing this issue, stating:

---

[22]  Rec. Doc. 1-1, p. 18.

17

19.

With regard to this offender's ability to shower, offender Brauner is given full access to the shower on the Ward as are other offenders in the treatment center. The showers are cleaned two to three times a day by inmate orderlies with a Clorox based solution. Furthermore, offender Brauner is provided by staff with a spray bottle for use in sanitizing the shower prior to and following its use.

20.

The showers are sanitized regularly and fit for their intended use.[23]

Similarly, Nurse Sharon Dunbar submitted a sworn affidavit in which she stated that plaintiff "was granted full access to the shower area in the Treatment Ward and the medical staff at LSP went as far as to allow this offender the option to utilize the shower prior to or after use by other offenders on the Ward."[24]

To the extent that plaintiff is complaining about the fact that, in his opinion, bathing assistance should be provided by professional staff rather than orderlies, that simply is not his call to make. The federal constitution does not address such minutiae and there has been no evidence offered to show that having orderlies perform this unskilled task amounts to a wanton disregard for any of plaintiff's serious medical needs. Further, in any event, the purported lack of assistance in the bathing area is of no moment in this case due to the fact that plaintiff chooses not to use the bathing area. Rather, he chooses to bathe in bed, and it is evident from his deposition testimony that his choice is grounded in his belief that the bathing area is unsanitary, *not* because of any purported unavailability of assistance.[25]

---

[23]   Rec. Doc. 70-6, p. 5.

[24]   Rec. Doc. 70-5, p. 3.

[25]   Rec. Doc. 70-9, pp. 28-31.

As to plaintiff's contention that the bathing area in unsanitary, he has not established that the purported conditions pose any significant risk to him, especially in light of the fact that he is not required to, and in fact does not, use it. Again, as he explained in his deposition, he chooses, and is permitted, to bathe in bed. Moreover, he has presented no competent summary judgment evidence to rebut the defendants' evidence that the facilities are cleaned daily with bleach or to show that the cleaning methods are so insufficient as to pose a significant risk to him if he elected to use the bathing area.[26]

In summary, this Court acknowledges that plaintiff is indeed suffering from serious medical needs. However, the determinative issue before the Court is not whether plaintiff's medical treatment is subpar in some respect, whether his medical problems persist despite treatment, or whether he is dissatisfied with his care; rather, it is only whether his serious medical needs are being met with *deliberate indifference*. Based on the competent summary judgment evidence before the Court, including the voluminous medical records showing continual efforts to respond to and meet plaintiff's needs, it is clear that there is no deliberate indifference in this case. Because no genuine issue of material fact remains in dispute with respect to that issue, these defendants are entitled to judgment as a matter of law.

---

[26] In support of his contention concerning the allegedly unsanitary conditions, plaintiff offers correspondence from Mercedes Montanges of the Capital Appeals Project written to the prison warden in connection with separate litigation involving inmate Shon Miller. Not only does that correspondence recount impermissible hearsay, the correspondence was not sworn or executed under penalty of perjury. Therefore, it clearly is not competent summary judgment evidence. See, e.g., Cruz v. Aramark Services, Inc., 213 Fed. App'x 329, 332-33 (5th Cir. 2007); see also Worthy v. Michigan Bell Telephone Co., 472 Fed. App'x 342, 344 (6th Cir. 2012).

## II.  Motions for a Preliminary Injunction

The undersigned notes that plaintiff has also filed two motions for a preliminary injunction and/or temporary restraining order.  Rec. Docs. 77 and 81.  Despite his request for temporary restraining orders, his motions must be construed solely as ones for a preliminary injunction because the relief he seeks would extend beyond the ten-day limit of a temporary restraining order.  Neal v. Federal Bureau of Prisons, 76 Fed. App'x 543, 545 (5th Cir. 2003).

Under the law of this Circuit, a plaintiff must make a clear showing that his case satisfies the following four criteria before he can receive a preliminary injunction:  (1) a substantial likelihood exists that he will succeed on the merits of his claim; (2) a substantial threat of irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants if the injunction is granted; and (4) the injunction will not undermine the public interest.  See Valley v. Rapides Parish School Board, 118 F.3d 1047, 1051 (5th Cir. 1997); see also Ingebresten v. Jackson Public School District, 88 F.3d 274, 278 (5th Cir. 1996); Doe v. Duncanville Independent School District, 994 F.2d 160, 163 (5th Cir. 1993); Holland American Insurance Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985).  He must satisfy all four factors; a failure to satisfy even one of the four factors requires a denial of the preliminary injunction.  See Mississippi Power & Light v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

The United States Fifth Circuit Court of Appeals has frequently cautioned that a preliminary injunction is an "extraordinary remedy" which should be granted only if the movant has clearly carried the burden of persuasion on all four of the above prerequisites.  See, e.g., Cherokee Pump & Equipment Inc. v. Aurora Pump, 38 F.3d 246, 249 (5th Cir. 1994).  As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."  Id.; see also

House the Homeless, Inc. v. Widnall, 94 F.3d 176, 180 (5th Cir. 1996). Plaintiff has not established that the extraordinary remedy is warranted in this case.

In plaintiff's first motion for a preliminary injunction, Rec. Doc. 77, he requests that the Court intervene immediately and order that he be provided with adequate medical care. However, for the reasons explained in detail in this Partial Report and Recommendation, the undersigned simply cannot say that there is a substantial likelihood that plaintiff will ultimately succeed on the merits of his inadequate medical care claims.

In plaintiff's second motion, Rec. Doc. 81, he asks that the Court enjoin prison officials from transferring him from the Louisiana State Prison. However, plaintiff has offered no evidence that such a transfer is in fact anticipated. Moreover, the Court notes that plaintiff's motion was filed in September of 2013, long before this matter was transferred to this Court, and yet he remains incarcerated at the Louisiana State Penitentiary. Therefore, it is reasonable to conclude that plaintiff's fears of an imminent transfer were unfounded.

For these reasons, plaintiff's motions for a preliminary injunction, Rec. Docs. 77 and 81, as well as his related motions to dispense with the requirement of security, Rec. Docs. 78 and 82, should be denied.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the motion for summary judgment filed by Assistant Warden Shirley Coody, Assistant Warden Kenneth Norris, Dr. Jonathan Roundtree, Dr. Jason Collins, and Dr. Hal McMurdo, Rec. Doc. 70, be **GRANTED** and that the Eighth Amendment claims against those defendants be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the cross motion for summary judgment filed by plaintiff, Rec. Doc. 72, be **DENIED**.

It is **FURTHER RECOMMENDED** that plaintiff's motions for a preliminary injunction and/or temporary restraining order, Rec. Docs. 77 and 81, be **DENIED**.

It is **FURTHER RECOMMENDED** that plaintiff's motions to dispense with the requirement of security, Rec. Docs. 78 and 82, be **DENIED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[27]

New Orleans, Louisiana, this first day of May, 2014.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.